WESTERN, Inc., Appellant,

v.

UNITED STATES of America, Appellee.

No. 15470.

United States Court of Appeals
Eighth Circuit.

June 20, 1956.

Robert J. Gaddy, St. Louis, Mo., for appellant.

Alan S. Rosenthal, Atty., Department of Justice, Washington, D. C. (Geo. S. Leonard, Acting Asst. Atty. Gen., Harry Richards, U. S. Atty., St. Louis, Mo., Samuel D. Slade, Atty., Department of Justice, Washington, D. C., were with him on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from an order allowing the claim of the Government in the amount of $8,491.55 as a priority claim under a Plan of Reorganization confirmed in a proceeding for the reorganization of Western, Inc. (appellant), under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.

Appellant contends that the District Court erred in determining that it had assumed the indebtedness of a predecessor partnership known as Banfield Packing Company of Miami, Oklahoma. If there was an adequate evidentiary basis for that determination, the order appealed from must be affirmed, since it is undisputed that the partnership was liable to the Government for subsidy overpayments made to the partnership in 1945 in the amount of $8,491.55.

Originally, Banfield Packing Company of Miami, Oklahoma, commenced business as an Oklahoma corporation organized in January, 1943. It was engaged in the meat packing business at Miami, Oklahoma. In August, 1943, it transferred all of its assets and business to a partnership, of the same name, composed of the stockholders of the corporation with one addition. The partnership continued the same meat packing business at Miami, Oklahoma, from August, 1943, until January 1, 1946, when it transferred its assets and business back to the Banfield Packing Company of Miami, Oklahoma, a corporation. In December, 1948, the stockholders of the corporation, who had been the partners while the business was conducted as a partnership, sold their stock to Harry C. Bass, Jr. For a short time thereafter the corporation continued the business under its original name. On July 1, 1949, its name was changed to Western, Inc. On March 17, 1952, Western, Inc., filed a petition for reorganization in the District Court under Chapter X of the Bankruptcy Act, and on November 28, 1952, the Government filed proof of its claim. The trustee filed objections to the claim.

The issue whether Western, Inc., the debtor corporation, had assumed the indebtedness of the partnership was tried to the court. The contract and bill of sale whereby the Banfield corporation had succeeded to the assets and business of the partnership were not produced, and apparently were unavailable. The Government served a subpoena duces tecum on the Trustee of the debtor, on its President, and on its attorney. Each responded that he was not in possession of the proposal of the Banfield corporation to purchase the assets and business of the partnership or the bill of sale from the partnership to the corporation. There was evidence that on January 1, 1946, at a special meeting of stockholders of the Banfield corporation, five directors

were elected, including R. C. Banfield and W. J. Otjen, and that the officers and directors were authorized to purchase the assets of the partnership in accordance with a proposal of the partnership to sell all of its assets to the corporation for $76,675.00 of its capital stock, "this corporation to assume and pay all outstanding obligations of said partnership."

The Government, in support of its claim, offered in evidence the depositions of Otjen and Banfield, who had been stockholders of the Banfield corporation and members of the predecessor partnership and were present at the stockholders' meeting of January 1, 1946. Otjen, who was a lawyer, testified, in effect, that the changes from a corporation to a partnership and back to a corporation were purely organizational changes; that the business had been conducted in the same location, in the same way, with the same personnel and same ownership. He testified that he prepared the proposal for the transfer of the assets from the partnership to the corporation and the bill of sale, and that, while he had no copies of them, he knew that by their terms the corporation undertook to assume and pay the liabilities of the partnership. Banfield's deposition was corroborative of that of Otjen. The depositions were admitted in evidence over the objections that the documents about which the deponents testified were the best evidence of their contents.

We think that there was competent evidence that the debtor corporation expressly assumed the obligations of the partnership. In fact, we think that the evidence would have justified no other conclusion. There was, we think, ample foundation for the introduction of the deposition of Otjen, who had first-hand knowledge of the facts and circumstances under which the assets and business of the partnership were transferred to the corporation on January 1, 1946. The Government had subpoenaed the production of the proposal and bill of sale from all those who reasonably might be expected to have those documents. The best evidence rule does not require proof of the nonexistence of a document beyond the possibility of mistake, United States v. Sutter, 21 How. 170, 175, 16 L.Ed. 119, before secondary evidence of its contents is admissible. The rule is not intended as a bar to the ascertainment of truth. The purpose of the rule is to require the production of the best evidence obtainable as to the contents of a document which is shown to be unavailable. The sufficiency of the foundation laid for the admission of secondary evidence rests largely in the discretion of the trial court. Probst v. Trustees of Board of Domestic Missions of General Assembly of Presbyterian Church, 129 U.S. 182, 188, 9 S.Ct. 263, 32 L.Ed. 642. See also, 20 Am.Jur. § 403, page 364, and § 406, pages 366–367.

The findings and conclusions of the District Court were correct.

The order appealed from is affirmed.