ANSTEAD, Judge.
This is an appeal from a final judgment pursuant to a jury verdict finding that the appellee broker was entitled to a commission on the sale of appellant’s property pursuant to the terms of an exclusive listing agreement. The appellant claims that the trial court erred in excluding from evidence a photocopy of a carbon copy of a letter he wrote to the appellee cancelling the agreement. We agree and reverse.
In defense of appellee’s claim for a commission the appellant alleged that he had written a letter to the appellee, well in advance of the sale of the property, cancel-ling the exclusive listing agreement, although permitting the property to continue to be shown on an open listing basis. To prove that he had done so, appellant offered a photocopy of a carbon copy of the original letter. Prior to doing so appellant testified that a carbon copy of the letter had been in the possession of his prior attorney, but that the attorney had lost the carbon. Appellant also testified that he had personally been permitted to search the attorney’s files and records, but could not locate the carbon copy. He identified the photocopy as one made of the carbon that his attorney had once possessed. The appellee denied any knowledge of the letter. The lower court sustained appellee’s objection to the photocopy as well as to appellant’s testimony about the contents of the letter.[1]
It is clear from appellee’s argument at trial and on appeal that he objected to the introduction of the photocopy on the basis of the common law best evidence rule. However, the case law he cites has been superseded by the evidence code:[2]
It is true that former Florida law recognized degrees of secondary evidence. Wicker v. Board of Public Instruction, 159 Fla. 430, 31 So.2d 635 (1947). However, section 90.954, Florida Statutes (1979), abolishes the distinction made between degrees of secondary evidence. Law Revision Counsel note section 90.954; Evidence in Florida § 8.11, The Florida Bar (2d ed. 1978).
Lowery v. State, 402 So.2d 1287, 1289 (Fla. 5th DCA 1981). In Lowery, the fifth district approved the admission of a photocopy of a photocopy of the original check since the original had been lost by the police.
The evidence code permits a duplication to be admitted instead of the original unless the document is a negotiable instrument, the authenticity of the document or original is questioned, or it is unfair to admit the duplicate. § 90.953, Fla.Stat. (1981). The word duplicate includes:
(a) A counterpart produced by the same impression as the original, from the same matrix; by means of photography, including enlargements and miniatures; by mechanical or electronic re-recording; by chemical reproduction; or by other equivalent technique that accurately reproduces the original; or
(b) An executed carbon copy not intended by the parties to be an original.
§ 90.951(4), Fla.Stat. (1981). In the case at bar, the authenticity of the photocopy was questioned; thus, in order to admit the copy into evidence the appellant had to show:
(1) All originals are lost or destroyed, unless the proponent • lost or destroyed them in bad faith.
*1202 (2) An original cannot be obtained in this state by any judicial process or procedure.
(3) An original was under the control of the party against whom offered at a time when he was put on notice by the pleadings or by written notice from the adverse party that the contents of such original would be subject to proof at the hearing, and such original is not produced at the hearing.
§ 90.954, Fla.Stat. (1981).
The second district considered secondary evidence in Pennsylvania National Mutual Casualty Insurance Co. v. Burns, 375 So.2d 302, 303 (Fla. 2d DCA 1979), stating:
The sufficiency of the foundation necessary for admission of a copy of an original document rests largely in the discretion of the trial court. Development Corp. of America, Inc. v. United Bonding Insurance Co., 413 F.2d 823 (5th Cir.), cert. denied, 396 U.S. 957, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969); Western, Inc. v. United States, 234 F.2d 211 (8th Cir.1956); Askins v. Easterling, 141 Colo. 83, 347 P.2d 126 (1959). Bower testified that he had taken the original policy to his attorney some years before the trial, that the attorney had left town, and that his efforts to contact him had been unsuccessful. Given this testimony, and the fact that Bower obtained the copy of the policy from sources which included Penn, the trial judge did not abuse his discretion in admitting the copy. It follows that there is no merit to Penn’s related contention concerning the lack of a countersignature on the policy since Section 624.425, Florida Statutes (1977), contemplates a countersignature only on an original policy.
Similarly, the third district permitted admission of secondary evidence where:
The testimony elicited by Biscayne adequately established that the original was under the control of Falsetti, the party against whom the secondary evidence was being offered. It also showed that an extensive but unsuccessful search for the Falsetti agreement was made. Lastly, Falsetti was on notice of Biscayne’s intention to use the O’Neil agreement to prove Falsetti’s agreement. Given these predicates, it was well within the trial court’s discretion to admit secondary evidence to prove the contents of the Falset-ti agreement. See Pennsylvania National Mutual Casualty Insurance v. Burns, 375 So.2d 302 (Fla. 2d DCA 1979); Goldstein v. Klein, 287 So.2d 390 (Fla. 3d DCA 1974); Development Corporation of America v. United Bonding Insurance Company, 413 F.2d 823 (5th Cir.1969); Western, Inc. v. United States, 234 F.2d 211 (8th Cir.1956).
This conclusion does not, however, dispose of Falsetti’s further claim that even if a sufficient foundation for the admission of secondary evidence were laid, the best available secondary evidence was not the O’Neil agreement, but parol evidence of the contents of the Falsetti agreement.[6] We cannot agree that a witness’s recollection of the words of a contract is better secondary evidence than an exact replica of the contract itself.[7] Oral testimony purporting to relate the contents of a writing is the least trustworthy evidence of its contents. McCormick, Evidence § 241 (2d ed. 1972); 4 Wigmore, Evidence §§ 1266, 1268 (Chadbourne rev. 1972)
Action Fire Safety Equipment, Inc. v. Biscayne Fire Equipment Co., Inc., 383 So.2d 969, 971-72 (Fla. 3d DCA 1980). (Emphasis in original.) Footnotes 6 and 7 read:
*1203 Id., at 971. (Emphasis in original.)
Regarding the introduction of parol evidence to show the existence of a written document, the third district held:
We think that the governing principle is that the rule which prohibits the introduction of parol evidence to vary a written instrument has no application where the legal existence or binding force of the instrument is in question. White v. White, 183 Kan. 162, 326 P.2d 306, 311 (1958). And cf. Watson v. McGee, 348 So.2d 461, 464 (Ala.1977).
Bleemer v. Keenan Motors, Inc., 367 So.2d 1036, 1038 (Fla. 3d DCA 1979).
Under the evidence code and the case law, we believe the trial court erred by excluding the secondary evidence of the appellant’s letter from evidence. There was evidence that appellant sent the original letter to the appellee and that the carbon copy given to his former counsel was lost. Under these circumstances, section 90.954 permits the admission of other evidence regarding the contents of the original document. There was no evidence offered to controvert the appellant’s account of the loss of the carbon copy. The only evidence in the record that even suggests the photocopy was a fabrication was the testimony of appellee that he never received the original. We do not believe this was a sufficient basis for the trial court to exclude the photocopy. This does not mean that the appellee is precluded from asserting that the photocopy and appellant’s testimony may be a fabrication. That, however, is an issue to be resolved by the trier of fact.
For purposes of admission of the photocopy there is no reason to treat the carbon copy that allegedly was lost any differently than the original letter that was allegedly sent to the appellee, but that, according to the appellee, was never received. Both the original and the carbon have been shown to be unavailable. Just as in Lowery, where the court treated a photocopy of a photocopy as a duplicate, we believe it is equally reasonable to treat a photocopy of a carbon copy as a duplicate since both fall within the above-quoted statutory definition of the word duplicate. The question of termination was a critical issue in the trial below, and the trier of fact should have access to all competent evidence submitted by the parties in order to reach a fair decision on that question.
Accordingly, the judgment of the trial court js reversed and this cause is remanded with directions that a new trial be conducted in accord herewith.
GLICKSTEIN and HURLEY, JJ., concur.

. Interestingly, a carbon copy of a second letter, written by appellant later and cancelling any “open” listing on the property was admitted into evidence. Appellee also denied any knowledge of this letter and further contended that such letter would have been insufficient to cancel the “exclusive” listing he had on the property. The purchaser of the property testified that he located the property on his own without the assistance of a broker and this was not disputed by the appellee. Rather, the ap-pellee relied on the exclusive listing which gave him the right to a commission regardless of who sold the property.

. At oral argument counsel for appellee asserted that the evidence code did not apply to this case. However, section 90.103(2) provides:
This act shall apply to criminal proceedings related to crimes committed after the effective date of this code and to civil actions and all other proceedings pending on or brought after October 1, 1981.
There is no question but that this case was pending on October 1, 1981, and, in fact, was tried in December of 1981.

. In the present case secondary evidence was admissible on the alternative grounds that the original was lost or that it was last under the control of Falsetti.

. The present case was tried in March 1979, prior to the effective date of the Florida Evidence Code, Section 90.-101, Florida Statutes (1979) et seq. Under Section 90.103(2), the Florida Evidence Code applies to civil actions *1203 accruing after the effective date. The Code adopts the better view that once a predicate for secondary evidence is laid, no distinction should be made between forms of secondary evidence. Significantly, the term other evidence, not secondary evidence, is used in the Florida Evidence Code. See § 90.954, Fla.Stat.