JORGENSON, Judge.
The plaintiff, Ruben Garcia, appeals from a final judgment rendered in favor of the defendants, Elena and Elizabeth Lopez, in a lawsuit involving an agreement to make a will. For the reasons which follow, we reverse.
Garcia and his wife, Maria, were divorced in 1956. In 1964, they agreed that Garcia would transfer his interest in their house to Maria, and, in return, Maria promised to leave the house to Garcia in her will. Garcia’s attorney, Merwin Taylor, drafted and notarized the agreement for them. The agreement was executed at Merwin’s office with both Merwin and Elsa Taylor, his wife and secretary, present to witness the agreement.
Maria died in 1982. Contrary to the agreement, Maria had devised the house to her niece Elizabeth Lopez. Elena Lopez, Maria’s sister and the personal representative of Maria’s estate, offered the will for probate, and Garcia demanded that title and possession of the house be delivered to him pursuant to the agreement. When the Lopezes refused, Garcia brought suit to enforce that agreement.
*471 At trial, Garcia offered into evidence a photostatic copy of the agreement. He testified that he never possessed the original and that it was retained by his attorney. Elsa Taylor testified that after her husband died she destroyed some of her husband’s office files and that the original agreement could not be located. On the copy of th'e agreement, Maria’s signature and the signature of Merwin Taylor, who signed as an attesting witness, appeared as reproductions. However, the signature of Elsa Taylor, the second required witness, appeared on the copy in blue ink as an original signature. When asked by the judge whether the execution and attestation of the agreement was done at the same time, Elsa replied: “I don’t recall. Logically and the way we used to handle things, that is the way it would have been done. They all signed it and I made the copy without signing right away.” Both Garcia and Elsa testified that Elsa signed the original. Elsa also testified that she witnessed the original signatures. The court held that the copy was inadmissible and entered final judgment in favor of the Lopezes.
In Florida, an agreement to make a will must be “in writing and signed by the agreeing party in the presence of two attesting witnesses.” § 732.701(1), Fla.Stat. (1983). Generally, an original is required to prove the contents of a writing, § 90.-952, Fla.Stat. (1983); however, a duplicate is admissible to the same extent as the original unless the writing is a negotiable instrument, a genuine question is raised about the authenticity of the original or any other writing, or it is unfair to admit the duplicate in lieu of the original. § 90.953, Fla.Stat. (1983). A copy of a writing is considered a duplicate if it “accurately reproduces the original.” § 90.-951(4)(a), Fla.Stat. (1983). The Lopezes contend that the copy is not an accurate reproduction of the original because the signature of Elsa appears not as a copy, but as an original signature. Because the copy is not an accurate reproduction, they say, it is not a “duplicate” within the meaning of section 90.951(4)(a), and, therefore, cannot be admitted under section 90.953, which provides for the admission of duplicates.
Assuming the Lopezes are correct in their contention that the copy is not a duplicate,[1] it is still admissible under section 90.954, Florida Statutes (1983). Section 90.954 is broader than section 90.953 —a copy which is not admissible under section 90.953 as a duplicate may still be admissible under section 90.954. See Lowery v. State, 402 So.2d 1287 (Fla. 5th DCA 1981); C. Ehrhardt, Florida Evidence § 954.1 (2d ed. 1984). Section 90.954 provides for admission of other evidence of the contents of the writing (i.e., evidence other than an original) if one of its four criteria is satisfied. Of relevance to this appeal is subsection (1), which provides for admittance of secondary evidence when “[a]ll originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith.” In the present case, Garcia made the required showing that the original was destroyed or lost without bad faith on his part, and the defendants offered no evidence to controvert Garcia’s account of the loss of the original. The trial court erred, therefore, in concluding that the copy of the agreement was inadmissible. Fredericks v. Howell, 426 So.2d 1200 (Fla. 4th DCA 1983). Once the copy of the agreement is admitted into evidence, the fact-finder then must decide whether to believe Elsa’s testimony that she witnessed the execution of the agreement and that she signed the original. See Fredericks, 426 So.2d at 1203. The trial court erred in melding the issue of the admissibility of *472 the copy with the issue of the correctness of the original’s execution.
Accordingly, we reverse and remand for further proceedings consistent with the views expressed herein.

. It is unclear in Florida whether an unsigned copy of a signed document "accurately reproduces the original” within the meaning of section 90.95 l(4)(a). See 1 S. Gard, Florida Evidence § 6:04 (2d ed. 1980) (difficult question whether an unexecuted copy is in fact a "true copy” of the writing as executed). But see C. Ehrhardt, Florida Evidence § 951.4 (2d ed. 1984) (unexecuted carbon copy not a duplicate because entire document not accurately reproduced).